**DIXON et al. v. COX et al.**

(Circuit Court of Appeals, Eighth Circuit. October 2, 1920.)

No. 5468.

1. **Indians ☞18—Statute gives Secretary of the Interior power to determine heirship of allottees.**

   Act June 25, 1910, granting the Secretary of the Interior jurisdiction to determine the legal heirs of intestate Indian allottees, is constitutional and valid, and the decisions thereunder by the Secretary are final and conclusive, and not subject to collateral attack, or reviewable by the courts, in the absence of showing of fraud, error of law, or gross mistake of fact.

2. **Indians ☞18—One decision as to heirship of allottee did not exhaust Secretary's power.**

   A decision by the Secretary of the Interior, under Act June 25, 1910, that a certain claimant was not the sole heir of an Indian allottee, did

not exhaust his power to determine who were the heirs, so as to render void his later decision that the claimant was the sole heir.

**3. Indians ⬡⟿18—Conclusiveness of Secretary's decision as to heirship stated.**

Whether or not the weight of evidence in substantial conflict sustains one or the other side of an issue of fact is a question on which the decision of the Secretary of the Interior, under Act June 25, 1910, as to heirship of Indian allottee, is generally final and conclusive; but his decision, like that of other quasi judicial tribunals, may be avoided by a suit in equity for fraud inducing it, for error of law on facts found, conceded, or established beyond dispute at the hearing, or on the ground that at the close of the hearing there was no evidence to support his finding on a material issue of fact which controlled the result; but for one to attack the findings of fact, as not supported by substantial evidence, he must allege and prove, not only that there was a mistake in the finding or findings, but the evidence before the Secretary from which the alleged mistake resulted.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by Roth Dixon and another against Jesse H. Cox and others. From a decree of dismissal, plaintiffs appeal. Affirmed.

Thomas L. Sloan, of Walthill, Neb., for appellants.

Karl J. Knoepfler, of Walthill, Neb. (Harry L. Keefe, of Walthill, Neb., Albert W. Jefferis and George M. Tunison, both of Omaha, Neb., T. S. Allen, U. S. Atty., of Lincoln, Neb., and B. H. Dunham and Herman Aye, both of Omaha, Neb., on the briefs), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and VAN VALKENBURG, District Judge.

SANBORN, Circuit Judge. This appeal challenges a decree of dismissal of the complaint by the plaintiffs, Roth Dixon and Frank Dick, to avoid an adjudication of the Secretary of the Interior under the Act of Congress of June 25, 1910, 36 Stat. 855; that the allotment of the 160 acres in controversy to Joseph Cox, an Indian of the Omaha Tribe, under the Act of August 7, 1882, 22 Stat. 341, descended, subject to the dower of Dora Cline Cox, to Jesse H. Cox; and to obtain a decree that the defendants, who claim under that decision and under a patent founded thereon, issued February 2, 1918, to Jesse H. Cox, hold the legal title under that patent in trust for the plaintiffs, who claim that this allotment descended to them through William P. Cox, a son of Joseph. The issue whether this land descended to Jesse H. Cox or to the plaintiffs was heard, considered, and decided by the Secretary of the Interior after full argument upon a mass of evidence taken by and in the presence of counsel for the respective parties in interest. The history of the case is interesting, but the details of that history are not material to its disposition. The right answers to these two questions necessarily determine the decision that this court must render, and therefore other matters discussed by counsel are laid aside. Did the Secretary of the Interior have jurisdiction to hear, consider, and conclusively determine the issue between these contestants, whether the title to this land descended to Jesse H. Cox or to the plaintiff, and.

if he had such jurisdiction, did the complaint or proof in this suit set forth a cause of action in equity to avoid the Secretary's adjudication for fraud, error of law, or absence of substantial evidence to sustain his conclusion?

[1] The material provisions of the Act of August 7, 1882, 22 Stat. 342, relative to these questions are:

Section 5. That the Secretary of the Interior should make an allotment of 160 acres of land out of the tract described in the act to each Indian of the Omaha Tribe who was the head of a family.

Section 6. That he should cause patents to issue therefor "in the name of the allottees, which patents shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indians to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state of Nebraska, and that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid, in fee discharged of said trust and free of all charge or incumbrance whatsoever: * * * Provided, that, the law of descent and partition in force in the said state shall apply thereto after patents therefor have been executed and delivered."

Section 7. "That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of said tribe of Indians shall have the benefit of and be subject to the laws, both civil and criminal, of the state of Nebraska."

The allotment and patenting of the lands under this act was completed on December 29, 1884, and such a trust patent as is described therein was issued to Joseph Cox on that day. On December 27, 1886, he died intestate. By the Act of June 25, 1910, 36 Stat. 855 (Comp. St. § 4226), Congress provided:

"That when any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive."

After notice and hearing and in strict accordance with the terms of this act the Secretary of the Interior finally ascertained and decided that, subject to the dower of Dora Cline Cox, the allotment of Joseph Cox, an Indian of the Omaha Tribe, who died intestate before the expiration of his trust period and before the issuance of a fee-simple patent, descended to Jesse H. Cox, and pursuant to that decision he issued on February 2, 1918, to Jesse H. Cox, as heir of Joseph Cox, the fee-simple patent of the United States to this land, subject to the dower interest of Dora Cline Cox.

Counsel for the plaintiffs concedes that the United States, during all the time between the allotment of the land in 1884 and the issue of the fee-simple patent in 1918, held it in trust for the benefit of Joseph Cox and his heirs, and that the Secretary of the Interior had jurisdiction of the administration of the land and of the execution of this trust. He argues, however, that immediately upon the death of Joseph Cox the right to the use thereof and to the ultimate title thereto immediately

vested in the plaintiffs, or in William P. Cox, under whom they claim as his heir or heirs, and that neither the Congress nor the Secretary could lawfully deprive them of that right. He insists that the proceeding before the Secretary, by virtue of which the title to and the use of the land were adjudged to Jesse H. Cox, deprived the plaintiffs of their right to the land and its use, and this without due process of law. He does not rest these claims on the ground that the plaintiffs did not have notice of the claim of Jesse H. Cox that was to be adjudged by the Secretary, or that they did not have notice of the time or place of the hearing; but he rests it upon the ground that the Secretary, the tribunal which heard and decided the issue of heirship, had no lawful authority so to do.

A careful consideration of the brief and the argument has led to the conclusion that these and all the other contentions presented by counsel for the plaintiffs rest upon the single proposition that the Act of Congress of June 25, 1910, which in terms empowered the Secretary finally and conclusively to ascertain and decide who were entitled as heirs of Joseph Cox to the use and title to his allotment, was unconstitutional and void, because that was a judicial question, which the Congress under the Constitution had no power to intrust to the final decision of an executive or administrative department or officer. If that proposition is not sound, then there was no unlawful deprivation of the plaintiffs of any of their rights, they suffered no lack of due process of law, there was no unconstitutional or void act of Congress, and no lack of jurisdiction in the Secretary. In support of his proposition that this act of Congress was beyond the power of that body, counsel cites Choate v. Trapp, 224 U. S. 670, 32 Sup. Ct. 565, 56 L. Ed. 941; Martin v. Hunter, 1 Wheat. 304, 4 L. Ed. 97; Kilbourn v. Thompson, 103 U. S. 168, 26 L. Ed. 377; United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171; Western Union Tel. Co. v. Myatt, 98 Fed. 335, and other decisions less material. These authorities treat of the general nature and extent of the powers of the legislative, executive, and judicial departments of the United States, but in none of them was the constitutionality or validity of the Act of June 25, 1910, considered or determined.

On the other hand, the question of the validity and effect of that act, and of the jurisdiction of the Secretary of the Interior to hear, ascertain and decide who were the parties entitled by descent to the allotments of deceased Indians described therein, has been repeatedly considered and conclusively determined by the Supreme Court and by other federal courts, and they have uniformly sustained the act, the power of the Congress to enact it, the jurisdiction of the Secretary to decide the questions of heirship, and the finality of his decisions. Bond v. United States, 181 Fed. 613, 615, 616; Pel-Ata-Yakot v. United States, 188 Fed. 387, 388, 389; Parr v. Colfax, 197 Fed. 302, 305, 117 C. C. A. 48, 51; Hallowell v. Commons, 239 U. S. 506, 508, 509, 36 Sup. Ct. 202, 60 L. Ed. 409; Lane v. Mickadiet, 241 U. S. 201, 203, 206, 207, 209, 36 Sup. Ct. 599, 60 L. Ed. 956. If these decisions had not been rendered, it would not be a difficult task to draw the conclusion they announce from other decisions of the Supreme Court, and

from the facts that the decedent and his heirs were Indians, wards of the United States, that when the Secretary's decision was made the United States held this allotment in trust for the heirs of Joseph Cox, that the administration of the land and the execution of the trust were administrative rather than judicial duties, and that the determination of the question who were the heirs of this decedent was necessary to the execution of the trust and to the administration of the land during its continuance.

Analogous grants of quasi judicial power to the Secretary, such as his jurisdiction to determine what persons are entitled as purchasers, pre-emptors, and homesteaders to tracts of public lands, analogous grants to the Dawes Commission of the quasi judicial power to determine what Indians of certain tribes were entitled to allotments of lands, and many other questions and many other grants of like character which have been sustained by the Supreme Court might be cited. But a discussion of the constitutionality and effect of the Act of June 25, 1910, and of the power of the Secretary to determine thereunder who the heirs of Indian allottees therein mentioned are, would be futile, because the Supreme Court has twice decided these issues. The conclusion of this court, therefore, is that the Act of June 25, 1910, which grants to the Secretary of the Interior jurisdiction to ascertain and determine who were the legal heirs of the Indian allottees of the Omaha Tribe, who died intestate while the United States held the titles to those allotments in trust for such heirs, was constitutional and valid, the decisions of those questions in such cases by the Secretary are final and conclusive, and his determination in this case that the title to the allotment of Joseph Cox and to the proceeds, use, and profits thereof descended to Jesse H. Cox, is neither subject to collateral attack nor reviewable by the courts, in the absence of pleading and proof of fraud, error of law, or gross mistake of fact.

[2] Another objection to the decree of dismissal is that, before the hearing by the Secretary on which his decision in hand was based, he had decided that Jesse H. Cox was not the sole heir of Joseph Cox, that this earlier decision exhausted his power to determine who were the heirs, and that for that reason his later decision was coram non judice and void; but that position is also untenable, because the Supreme Court expressly so decided in Lane v. Mickadiet, 241 U. S. 201, 209, 36 Sup. Ct. 599, 60 L. Ed. 956.

[3] The second question is: Did the complaint or proof in this suit set forth a cause of action in equity to avoid the Secretary's decision for fraud, error of law, or absence of substantial evidence to sustain it? Whether or not the weight of evidence in substantial conflict sustains one or the other side of an issue of fact is a question upon which the final decision of the Secretary in a case of this character is generally final and conclusive; but his decision upon this issue of heirship, like the decision of the Land Department, of the Dawes Commission, and of other quasi judicial tribunals, may undoubtedly be avoided by a suit in a court of equity on account of fraud which induced it, on account of error of law upon facts found, conceded, or established beyond dispute at the hearing before him, or on the ground that at the close of

268 F.—19

such hearing there was no evidence to support his finding on a material issue of fact which controlled the result. James v. Germania Iron Company, 107 Fed. 597, 600, 601, 46 C. C. A. 476, 479, 480; Howe v. Parker, 190 Fed. 738, 746, 111 C. C. A. 466, 474.

There was no pleading or proof of fraud in the conduct of the hearing before the Secretary. On the facts found by him, on the facts conceded, or on those established beyond dispute, there was no error of law in his action. Whether or not he made a finding of a material fact or material facts conditioning his decision, which there was no substantial evidence to support, and whether or not he made a gross mistake in his finding of such facts, are questions which this court cannot consider or determine in this case, because there is no admission that there was no substantial evidence before him to sustain his findings; nor is there any pleading or proof in the record in hand of all the evidence that was before him, so that this court can for itself determine this matter by a comparison of all the evidence with the findings. If one would attack the finding of facts of a quasi judicial tribunal like the Secretary or the Land Department, upon the ground that there was no substantial evidence to support it, he must allege and prove, not only that there was a mistake in the finding or findings, but the evidence before that tribunal or Secretary from which the alleged mistake resulted, before any court can enter upon the consideration or decision of any issue of fact determined at the hearing by such tribunal or Secretary. United States v. Northern Pacific Ry., 95 Fed. 864, 870, 882, 37 C. C. A. 290, 296, 308; James v. Germania Iron Co., 107 Fed. 597, 600, 601, 46 C. C. A. 476, 479, 480; United States v. Atherton, 102 U. S. 372, 374, 26 L. Ed. 213; United States v. Budd, 144 U. S. 154, 167, 168, 12 Sup. Ct. 575, 36 L. Ed. 384.

The complaint contains no pleading sufficient to tender to the court below the issue of a gross mistake of fact by the Secretary, as neither the mistakes in his decision nor all the evidence before him upon the questions of fact conditioning his mistakes is either pleaded or proved.

The decree below must therefore be affirmed; and it is so ordered.