John B. GORDON, Plaintiff,

v.

Fred W. BRIGHT, Academy, Aeronautical Center, Federal Aviation Administration FAA; Harold T. Swenson, Academy, Aeronautical Center, FAA; C. W. Mueller, Academy, Aeronautical Center, FAA; C. A. REA, Superintendent, Academy, Aeronautical Center, FAA; W. Lloyd Lane, Director, Aeronautical Center, FAA; William F. McKee, Administrator of FAA; Alan S. Boyd, Secretary of Department of Transportation; John F. Macy, Jr., Commissioner, U.S. Civil Service Commission; L. J. Andolsek, Commissioner, U.S. Civil Service Commission; Robert E. Hampton, Commissioner, U.S. Civil Service Commission; and the United States of America, Defendants.

Civ. No. 67–380.

United States District Court
W. D. Oklahoma.
March 27, 1968.

Clyde Watts, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., William A. Hockensmith, Midwest City, Okl., for plaintiff.

B. Andrew Potter, U. S. Dist. Atty., Oklahoma City, Okl., and Robert L. Berry, Asst. Dist. Atty., Oklahoma City, Okl., for defendants.

MEMORANDUM OPINION

EUBANKS, District Judge.

On April 6, 1966, plaintiff was involuntarily removed from his position of Electronic Technician, GS–11, with the Academy, Aeronautical Center, Federal Aviation Administration, in Oklahoma City. The discharge of plaintiff was affirmed and upheld through all administrative appeals. This action is brought pursuant to 5 U.S.C.A. § 701 et seq. wherein plaintiff seeks to be restored to his former position or to an equivalent position and grade. Plaintiff also seeks to recover his back pay and costs herein incurred.

The matter is before the court now on motion of defendant to dismiss or in the alternative for summary judgment.

In his brief filed in opposition to the motion of defendants, plaintiff in effect demands a trial de novo and requests that he be given reasonable opportunity in regular proceedings to prove the truth of his contentions that he was arbitrarily and capriciously discharged. I have concluded that a trial de novo is neither authorized nor wise. This very court in Couch v. Udall, 265 F.Supp. 848 said: "It is not the function of a Court on review of administrative action to engage in de novo fact finding or trial process or to consider additional evidence." See also Coleman v. United States, 363 F.2d 190 and cases cited under Note 196 of 5 U.S.C.A. § 706. The court apparently reached a different conclusion in Beckham v.

United States, 375 F.2d 782, 179 Ct.Cl. 539. I have before me a copy and transcript of all the proceedings conducted relative to this matter during the administrative proceedings and accordingly deny the request of plaintiff for an evidentiary hearing and will decide the case on the record before me.

In his complaint the plaintiff challenges the adequacy of the administrative procedure in seven particulars. Each will be hereinafter discussed, although some of them have not been briefed by either plaintiff or defendants.

██ The first reason assigned by plaintiff as grounds for a reversal of the civil service decision is that prior to his discharge defendants failed to render any kind of performance rating relative to his employment and failed to give him a ninety day warning and reasonable opportunity to demonstrate satisfactory performance. In this connection and in the appeal filed by plaintiff on April 14, 1966, he cites an internal personnel regulation of the F.A.A. (PT P3750.1A, Paragraph 58) which reads as follows: "Supervisors bear primary responsibility for determining the adequacy of their employees' performance and conduct and for initial corrective action where necessary. * * * Where corrective action can be accomplished through closer supervision, on the job training, admonition or oral reprimand, formal disciplinary action should not be taken." It should be mentioned that this is not a mandatory regulation but an alternative one and applicable where corrective action can be accomplished through non-disciplinary action. This contention also overlooks the record in this case which reflects that on April 22, 1965, plaintiff was sent a three page letter by Fred W. Bright which called attention to the inadequate performance of plaintiff. This letter pointed out in detail deficiencies which had been observed in plaintiff's performance and mentioned five specific unacceptable performances, each of which were detailed and were as follows:

1. Inadequate lesson preparation.
2. Technical content of lectures below minimum standards.
3. Poor utilization of time.
4. Confusing statements.
5. Students questions not answered satisfactorily.

In said letter plaintiff was advised that he would be subsequently monitored at frequent intervals by his superiors and contained the following admonition; "In the event your performance does not show the required improvement outlined in this memorandum, it will be necessary to consider disciplinary action" and also closed with the following; "It is hoped that the additional time allotted to you for class preparation will allow you to achieve acceptable performance in your next class. Please request any additional assistance that you feel will help improve your performance". I have not been cited any statute or federal regulation, and considerable independent research discloses none, that requires even the letter warning mentioned above and 5 U.S. C.A. § 7512 mentions no mandatory warning. In addition to the foregoing this record shows that at least three earlier and unsuccessful attempts had been made by his superiors to discharge plaintiff from his position. These earlier attempts met with failure because of procedural defects as a result of which the Civil Service Commission had ordered plaintiff restored to duty. Such earlier attempts should have served as ample warning to plaintiff if indeed any warning was necessary.

██ Plaintiff's second contention is that the charges brought by the employing agency were untimely and were in effect an attempt by the agency to reraise the earlier charges which had been dismissed. This argument is substantially, although not entirely, without merit. The notice of removal dated March 1, 1966, which contained five specifications and 69 noted work deficiencies with 11 attachments, did mention some deficiencies occurring more

than 30 days prior to the date of the notice. Normally disciplinary action is to be taken 30 days after the infraction, but as pointed out by Mr. C. D. Rea, Superintendent, F.A.A. Academy, Aeronautical Center, plaintiff's performance had been periodically observed and deficiencies found were communicated to plaintiff through written critique sheets or by discussion with plaintiff. As heretofore mentioned, earlier removal action was initiated but because of procedural errors therein plaintiff was restored to duty. This restoration to duty did not serve to eliminate the deficiencies nor change the requirements of the Government concerning competency of its employees. Because of the earlier procedural failures plaintiff's superiors in the instant case apparently proceeded in painstaking detail and, so to speak, dotted every "I" and crossed every "T" which delayed the letter of proposed removal beyond the normal 30 day period. A reading of the letter of proposed removal dated March 1, 1966, together with the attachments would readily convince anyone that it was a time consuming operation. Further the delay was, to some extent, brought about by plaintiff himself when he challenged earlier charges as being lacking in specificity although concededly he had every right to do so. Finally, we find no statute nor federal regulation that requires charges to be brought within 30 days from the date of the infraction but are cited only an internal personnel regulation of F.A.A. [PT P3750.1A Paragraph 66(2)] which says, "Normally a notice of proposed adverse action should be issued to the employee not later than 30 days from the date of the incident for which the action is proposed took place." I hold that this was not a normal situation due partly to the technical and involved nature of the charges and due to the desires of plaintiff's superiors to succeed, in this effort, to meet the sundry stringent requirements of the law and accordingly hold that the

charges against plaintiff were timely commenced.

■ Plaintiff's third challenge to the administrative procedure is that because of the complexity of the charges against him and the highly technical content thereof he was not given a reasonable time for preparation and submission of his reply thereto. This contention is devoid of merit for several reasons. The proposed removal notice stated, "You may answer these charges personally, in writing, or both to Dr. C. D. Rea, Superintendent, F.A.A. Academy, Aeronautical Center, Oklahoma City, Oklahoma. You may also furnish affidavits in support of your answer. You will be allowed 15 work days (the normal time granted is 10 work days) from the date you receive this letter to submit your answer. *Consideration will be given to extending this date if you submit a request stating your reasons for desiring more time to prepare your answer.* [Emphasis mine] If you do not understand the above reasons why your removal is proposed, contact Mr. Harold Swenson for further information." There is no showing that plaintiff requested any extension of time to answer the charges. Title 5 C.F.R. 752.202(b) provides, "Except as provided in Paragraph (c) of this section, an employee is entitled to a reasonable time for answering charges and a notice of proposed adverse action and for furnishing affidavits in support of his answers. The reasonable time required depends on the facts and circumstances of the case, and shall be sufficient to afford the employee ample opportunity to prepare answers and secure affidavits. * * *" Section 7512(b)(2) of Title 5 U.S.C.A. also provides for, "A reasonable time for answering." It is true that the charges were complex and highly technical but since plaintiff did not request an extension of time to answer same and since he had been down the road at least twice before, I hold that the time allotted for answering the charges was ade-

quate or at least not unreasonable under the circumstances in this case. In addition to the foregoing, the files reflect on March 9, 1966, plaintiff requested further details on the charges brought against him which request was complied with on March 10, 1966. Plaintiff could just as easily have requested an extension of time to answer but failed to do so.

As his fourth challenge to the procedure during the administrative hearings, plaintiff contends that the appeals examiner arbitrarily precluded him from entering certain documents as evidence at the hearing. (See discussion regarding third part of sixth contention) In this connection plaintiff says that before the hearing he requested such documents to be produced which request was approved, but the action of the examiner in excluding the documents in evidence disrupted plaintiff's planned presentation of his case. I must frankly say that I am somewhat at a loss to understand this allegation. In the first place, I cannot find where plaintiff ever requested these documents although he says that he did and that his request was granted. Secondly, I am unable to find where any attempt was made to introduce these documents into evidence. The record does show that plaintiff requested the attendance at the hearing of numerous agency employees. His request was granted with the exception of three former students, two of which were no longer employed by the agency, and the third being on Wake Island. Plaintiff had been duly advised in writing that the Appeals Examiner had no power of subpoena and that plaintiff would need to make arrangements for the attendance of his witnesses. The Appeals Examiner, George S. Yrisarri, conducted the hearings in Oklahoma City on June 15th and 16th, 1966, pursuant to notice which is not challenged. At said hearing plaintiff appeared in person and through his representatives Ola D. Hall, Don Emery, and Hurschel Bailey, numerous witnesses were heard after which Mr. Yrisarri wrote a detailed résumé of the proceedings including a summary of the testimony of each witness. No mention is therein made of any effort of plaintiff to introduce the documents he now refers to. However, the résumé does show that he (Yrisarri) made the appeals file available to both sides before and during the hearing. After the preparation of the written summarization of the hearing on June 23, 1966, examiner Yrisarri transmitted a copy of the summary to both plaintiff and his representative Hall wherein it was requested that they indicate agreement with the summary by signing the final page or submit in writing exceptions to any part of the summary which indication of approval or disapproval was to be done within five days from June 23, 1966. On June 27, 1966, plaintiff, by letter, requested that the examiner grant him a five day extension in which to return the summary due to the fact that his (plaintiff's) representative was ill. On June 29, 1966, Mr. Yrisarri granted the request and extended the time to July 5, 1966. There is nothing in the record to indicate plaintiff took any further action until after he received a copy of the final findings and recommendations of the appeals examiner except by an undated note added to his signature on the statement of agreement with hearing summary wherein plaintiff says, "Except as noted on the attached page as per exception 1 through 8." The attached page is as follows:

EXCEPTIONS.

1. *Page 1 and 2*—Mr. Norman C. Busey, Mr. Walter W. Nance, Mr. Paul J. Costello, Mr. Ernest R. Cordova, Mr. Fred W. Bright, Mr. R. W. Sargent, Mr. D. D. Davis, Dr. C. D. Rea, and Mr. H. T. Swenson were not called as witnesses for the appellant.

2. *Page 16, par 3, line 3*—"teaching assistant to Mr. Swenson" should read, "technical assistant to Mr. Swenson".

3. *Page 16, par 5*—Mr. Davis stated that he did not know which parts of the specifications were his and which were Mr. Bright's.

4. *Page 17, par 2, line 6*—The quote "should and expected" should read, "should" and "is expected".

5. *Page 17, par 3*—Mr. Hall called attention to the sworn statements in the record concerning remarks made by Mr. Swenson that Mr. Gordon would be removed again.

6. *Page 17, par 6*—Exhibit 2 by Mr. Hall to show that the appellant was held on his position.

7. *Page 21, par 1, line 5*—The words, "ten percent" should read, "one percent."

   *line 6*—The words, "ninety percent" should read, "ninety-nine percent".

8. *Page 21*—Mr. Hall asked that all records be considered.

I have no difficulty in overruling this fourth challenge made by plaintiff for the reason that there is no showing in the record that he attempted to introduce any documents that were not received. Further, if he did make such attempt which was denied, same should have been called to the attention of Mr. Yrisarri at the proper time so as to permit a correction in the record and finally, there is no showing as to the nature of the documents in question so as to allow me to determine whether they were or were not admissible.

■ As his fifth grounds for reversal plaintiff contends that during the agency hearing his employer-accuser was permitted to cross examine plaintiff's accusers and that, although represented at the hearing, he (plaintiff) did not have *legal* counsel. This contention is without merit. When plaintiff was notified of the time and place of the hearing he was specifically advised that he could appear personally and by a designated representative. Thereafter plaintiff requested the attendance at the hearing of certain witnesses who were agency employees and this request was granted.

The summarization of the hearings prepared by the examiner failed to substantiate that accusers were cross examined except by plaintiff and his representative. It might here be mentioned that although the seven specific challenges to agency procedure did not mention it, plaintiff in his brief now seems to belatedly challenge the failure of the agency to produce employee, Mueller, at his hearing. In this connection I can only say that the summarization by the hearing examiner says, "Mr. Hall withdrew his request that Mr. C. W. Mueller be made available as a witness."

5 C.F.R. 772.305(c) (2) provides:

"An agency shall make its employees available as witnesses at the hearing when (i) requested by the Commission after consideration of a request by the appellant or the agency and (ii) it is administratively practicable to comply with the request of the Commission. If the agency determines that it is not administratively practicable to comply with the request of the Commission, it shall submit to the Commission its written reasons for the declination. Employees of the agency shall be in a duty status during the time they are made available as witnesses. Employees of the agency shall be free from restraint, interference, coercion, discrimination, or reprisal in presenting their testimony."

■ I find, and accordingly hold, that plaintiff specifically withdrew his request that Mueller be called as a witness and that the fact that two witnesses were no longer employed by the agency and a third was on Wake Island at the time of the hearings made it administratively impractical for the agency to comply with the request of plaintiff that the witnesses attend his hearing.

As his sixth point of contention, plaintiff challenges the overall findings of the Civil Service Commission and further contends that the Board of Appeals and Review failed to comply with Section 14 of the Veterans' Preference Act (Sec. 7512, 7701 of Title 5 U.S.C.A.) in that

said B.A.R. declined plaintiff's offer of proof, failed to grant him a hearing and arbitrarily affirmed the hearing examiner in upholding his involuntary removal.

■ With reference to the first part of this sixth contention of failure of proof, I can only say the review of the record convinces me that the agency not only sustained its charges by a preponderance of the evidence but in my considered opinion the specific charges of inadequate performance were overwhelmingly established by an abundance of proof.

■ In asserting that Section 14 of the Veterans' Preference Act was not complied with, plaintiff seems to be taking the position, as he has at the present stage of the case, that he was entitled to a full evidentiary hearing de novo before the Board of Appeals and Review although none was requested by him at that time. When appellant was notified of the adverse ruling by the Appeals Examiner on July 26, 1966, he was simultaneously furnished with a copy of the adverse ruling. The last paragraph (Part IV) of the decision reads as follows:

"Unless this decision is further appealed within seven calendar days of the day it is received, it becomes the final decision of the Civil Service Commission. Two copies of any further appeal should be addressed to the Board of Appeals and Review, U. S. Civil Service Commission, Washington, D. C., 20415. Since a further appeal does not include the right to a hearing before the Board of Appeals and Review, any representations which the Board should consider beyond those now in the appeal file must be submitted in writing. Please send two copies."

A casual reading of the foregoing discloses that plaintiff was specifically advised that the appeal to the B.A.R. would not include any formal evidentiary hearing. Thereafter plaintiff on August 3, 1966, requested a 30 calendar day extension within which to prepare and submit his appeal. This request was premised upon the assertion that the attorney whom he desired to employ was engaged in other litigation and could not prepare his appeal adequately unless the extension of time was given. This request for extension was granted and thereafter, on September 10, 1966, plaintiff presented a detailed and lengthy statement of his position together with his affidavit and attachments. He also submitted the affidavits of Hurschel Bailey and of Ola Hall, but he made no request for an evidentiary hearing, if indeed one were available, and cannot now assert the failure to grant him one as a procedural error. I find nothing in Section 7701 or 7512 of Title 5 U.S.C.A. that requires the B.A.R. to conduct an evidentiary hearing when appeals are made to it from the decision of the Appeals Examiner.

With reference to the third contention made within the sixth allegation of error that the board declined plaintiff's offer of proof, I can only say that this contention is entirely without merit. It is apparent that the earlier allegation that the Appeals Examiner failed to receive documents offered in evidence (mentioned in connection with the fourth contention) must have related to plaintiff's assertion that the documents in evidence in connection with the prior attempts to remove him should be received in evidence so as to show parallel charges or duplicate charges against him. However, the B.A.R. did consider these former charges and made several references thereto in its final decision affirming the Appeals Examiner and specifically found that, "the Board of Appeals and Review finds that the record establishes Mr. Gordon had been duly notified of the significant deficiencies found in his classroom presentations on several occasions and had been afforded all reasonable advice, assistance, and opportunity toward meeting requirements of satisfactory performance in his position but that the deficiencies in Mr. Gordon's lectures continued as set forth by

the sustained specifications supporting the removal action effected on April 6, 1966." This quoted excerpt from the decision of the B.A.R. followed immediately after a review of the inadequacies observed from November 1964 through June 1965. Further, an entire transcript of the prior efforts to remove plaintiff are before this court as Exhibit B.

Finally, and in his seventh specification, plaintiff contends that the action taken against him was unduly harsh and that lesser punishment could and should have been considered. What I have said relative to plaintiff's first proposition is equally applicable here. If, as alleged by plaintiff, he had a long record of satisfactory service the record before me is also replete with evidence that he had a fairly lengthy tenure of completely unsatisfactory service and it was for his superiors to say which type of disciplinary action was in order.

The court's jurisdiction in this case is limited to a determination of whether the required procedural steps have been substantially complied with. Seebach v. Cullen, 338 F.2d 663, cert. denied, 380 U.S. 972, 85 S.Ct. 1331, 14 L.Ed.2d 268; Brown v. Zuckert, 349 F.2d 461, cert. denied 382 U.S. 998, 86 S.Ct. 588, 15 L.Ed.2d 486; Bailey v. Macy (C.A. 10) 378 F.2d 1021.

It has been generally held that disciplinary action in removal of government employees are matters of executive discretion and subject to judicial review only to the extent required to insure substantial compliance with pertinent statutory procedures and to guard against arbitrary or capricious action. McTiernan v. Gronouski, 337 F.2d 31; Seebach v. Cullen, supra; Hargett v. Summerfield, 100 U.S.App.D.C. 85, 243 F.2d 29, cert. denied 353 U.S. 970, 77 S.Ct. 1060, 1 L.Ed.2d 1137.

A review of this record convinces me that plaintiff's superiors acted wisely in effecting his involuntary dismissal and no arbitrary or capricious action is shown. Plaintiff's superiors, after first discovering his deficiencies, allowed plaintiff to monitor other classes so as to assist him in attaining a satisfactory duty performance level. They also granted him other assignments in an effort to find something he could do well but all to no avail.

The motion of defendants for summary judgment herein is sustained.